IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MINOO E. KOBRAEI,

*Plaintiff,*

v.                                                          Civil Action No.: ELH-11-3498

GENERAL KEITH B. ALEXANDER,

*Defendant.*

**MEMORANDUM OPINION**

Minoo E. Kobraei, plaintiff, filed suit against General Keith B. Alexander, Director of the

National Security Agency ("NSA"), alleging discrimination in employment on the basis of age

and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

*et seq.*, and Md. Code (2009 Repl. Vol.), § 20-601 *et seq.* of the State Government Article

("S.G.").[1]  *See* Amended Complaint (ECF 2).  Defendant has filed a motion to dismiss, or, in the

alternative, for summary judgment ("Motion," ECF 22), arguing lack of subject matter

jurisdiction and failure to exhaust administrative remedies.  The Motion has been fully briefed,[2]

and no hearing is necessary to resolve it.  *See* Local Rule 105.6.

---

[1] Suit was filed in the Circuit Court for Anne Arundel County, Maryland.  As discussed, *infra*, defendant removed the case to federal court.  *See* ECF 1.  Although plaintiff complains of age discrimination, neither the Complaint (ECF 19) nor the Amended Complaint (ECF 2) invokes the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Plaintiff has also brought suit under S.G. § 20-601, but "Title VII establishes the exclusive and preemptive scheme under which federal employees can seek redress for employment discrimination." *Pueschel v. United States*, 369 F.3d 345, 348 (4th Cir. 2004).

[2] The defendant has filed a supporting memorandum ("Memo," ECF 22-1).  Plaintiff opposes the Motion (ECF 25) and has filed a supporting memorandum ("Opposition," ECF 25-1), to which defendant has replied.  *See* "Reply," ECF 28.  The parties have also submitted numerous exhibits.

## Factual and Procedural Background[3]

The facts pertinent to resolution of the Motion are those pertaining to plaintiff's exhaustion of administrative remedies and the circumstances under which suit is pending in this Court.   Because the facts undergirding plaintiff's discrimination claims are generally not pertinent to the resolution of the Motion, I have included only a brief statement of plaintiff's averments concerning the alleged discrimination, drawn largely from the Amended Complaint, for the purpose of providing context.

Plaintiff was born on January 21, 1952, and is sixty years old.  Amended Complaint ¶ 3. She is a United States citizen of Iranian origin, *id.*, employed as a Language Analyst by NSA at Fort Meade, Maryland.[4]  She avers that NSA, through three of its employees, Barry E., Melanie B., and Theron A.,[5] "engaged in a pattern or practice of unlawful discrimination on the basis of national origin by denying plaintiff promotion, fair salary increases, and subjecting her to arbitrary ratings on the basis of her national origin and age…." *Id.* ¶ 8.  Further, she alleges that "she was harassed, her character was assassinated, and she was subject to a hostile work environment." *Id.* ¶ 10.   She also alleges that "she was reprised for her filing with Equal Employment Opportunity and Diversity ('EEOD'), Employee Resource Group ('ERG') and for her filing of a reconsideration request of her 2009 Annual Contribution Evaluation ('ACE')." *Id.*

---

[3] In the posture of a motion to dismiss, the court assumes the truth of plaintiff's allegations.  *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  With regard to a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

[4] Plaintiff apparently holds a doctoral degree, as she is sometimes referred to as "Dr. Kobraei."

[5] Barry E. was Kobraei's immediate manager.  *Id.* ¶ 5.  Melanie B. "was Barry E.'s supervisor," and Theron A., who is sometimes referred to as Terry A., was a "deputy director." *Id.* Plaintiff refers to these individuals as "defendants," but they are not captioned as defendants, and do not appear to have been served.  The last names of these individuals have been redacted from the documents in the record.

¶ 11.  According to plaintiff, "her 2010 ACE mid-cycle evaluation contains false accusatory information and ignored her accomplishments." *Id.* ¶ 12.  As a result, Kobraei claims that she has "suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress." *Id.* ¶ 16.  She also asserts that "she has incurred medical expenses" and that "she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities." *Id.*  Therefore, plaintiff seeks "Court costs and legal fees," as well as "$500,000 in compensatory damages" and "$1 million in punitive damages." *Id.* at 4.[6]

On March 4, 2010, plaintiff contacted the Equal Employment Opportunity ("EEO") office at NSA, via email, to report that she had been the victim of discrimination in her employment.  *See* EEO Counselor's Report, defendant's Exh. 1, at 1.  She was interviewed by an EEO counselor on March 12, 2010.[7]  Plaintiff related to the EEO counselor that, since July 9, 2009, she had been subjected to discrimination based on age and national origin.  *Id.* at 1-2.  At that time, she was "advised in writing of her rights and responsibilities in the EEO complaints process…." *Id.* at 2.  The EEO counselor then conducted an investigation, examining relevant documents and interviewing witnesses, including plaintiff, Barry E., and Theron A.  *Id.* at 2-5.  At the conclusion of the investigation, plaintiff asked the counselor to issue a "notice of right to file a formal complaint of discrimination." *Id.* at 5.

Accordingly, on May 19, 2010, the EEO counselor provided plaintiff with a "Notice of Right to File a Formal Complaint of Discrimination" (the "Notice").  *See* Notice, defendant's

---

[6] Plaintiff continues to work for NSA.  At her request, she was transferred to another office, where she found "peace and respect…."  *See* defendant's Exh. 3, email from plaintiff of August 11, 2010.

[7] The EEO counselor's first name is "Hester."  Because her surname has been redacted,  I refer to her as the "EEO counselor."

Exh. 2, at 1.  The Notice provided plaintiff with detailed instructions as to how and where to file a formal complaint.  *Id.* at 1-2.  Plaintiff signed the Notice, acknowledging receipt of it.  *Id.* at 2.

Plaintiff filed a formal EEO complaint on June 3, 2010.  *See* defendant's Exh. 5. Thereafter, she was advised by Marline, of the NSA EEO,[8] that it contained "a substantial amount of classified information," and was instructed to file a revised complaint "no later than 20 July 2010."  *Id.*  However, it was not until August 11, 2010, that plaintiff filed the revised complaint, via email.  *See* defendant's Exh. 3, at 1.  Kobraei was represented by counsel at the time she filed her revised complaint.  *See id.*  The submission exceeded fifty pages and recounted a number of incidents, but did not delineate them into individual claims.  *See id.*

On September 8, 2010, the NSA EEO sent plaintiff's counsel a "Notice of Acceptance of Complaint of Discrimination Based on Age and National Origin."  *See* defendant's Exh. 4.  The NSA EEO divided the allegations into separate claims, of which eleven were accepted.  *Id.*  The Notice said, in part,

> An Investigator will be assigned and be in contact with you.  Please be aware that the Investigator assigned to investigate your claim of discrimination must conduct a thorough and impartial investigation; *it is important that you cooperate with the investigation* and provide the Investigator with all relevant information which you believe supports your claim.  (Emphasis added).

On November 16, 2010, Eric, the EEO investigator,[9] propounded interrogatories to plaintiff via email, consisting of 102 questions.  *See* defendant's Exh. 8.  This included six preliminary questions, followed by approximately eight substantive questions for each of plaintiff's eleven accepted claims.  *Id.*  Plaintiff was instructed to submit her answers to the

---

[8] Correspondence sent by the NSA EEO was signed by "Marline," whose surname has been redacted.  Her signature line indicates that, at the relevant time, she served as "Chief of the Office of Discrimination Complaints—Equal Employment Opportunity and Diversity." Correspondence from "Marline" is referred to here as correspondence from the "NSA EEO."

[9] "Eric" was the EEO investigator.  His surname has been redacted.  Accordingly, I have referred to him as the "EEO investigator."

interrogatories "no later than 1 December 2010." *Id.* at 2.  On November 18, 2010, plaintiff's counsel complained to the EEO investigator that "the number of Interrogatories was too high and prohibitive," and requested a reduction in the number of questions.  Timeline of Events, defendant's Exh. 17, ¶ 48.[10]  The EEO investigator "explained that the number of questions was a result of the Complainant filing 11 claims in total," and denied plaintiff's counsel's request to reduce the number of questions.  *Id.*

By letter of December 9, 2010, *i.e.*, more than a week after the interrogatory response deadline, the NSA EEO notified plaintiff's counsel that, as of that date, the interrogatories had not been answered.  *See* defendant's Exh. 9.  The letter extended the deadline to answer the interrogatories until December 17, 2010.  *Id.*  But, the NSA EEO warned that, should plaintiff fail to provide a written response, the NSA EEO would "begin dismissal procedures…." *Id.*  A copy of the letter was sent to plaintiff.  *Id.*

On December 17, 2010, the NSA EEO again wrote to plaintiff's counsel, indicating that plaintiff still had not responded to the interrogatories.  *See* defendant's Exh. 10.  *Id.*  The NSA EEO also noted that, although the letter of December 9, 2010 was transmitted to plaintiff's counsel via facsimile, plaintiff's counsel had asserted in a telephone conversation with the EEO investigator that he had not received the fax.[11]  *Id.*  Further, the letter acknowledged that the NSA EEO's letter of December 9, 2010, had not been mailed until December 14, 2010.  *Id.* Accordingly, the NSA EEO extended the response deadline until January 3, 2011.  *Id.*  Again, plaintiff's counsel was warned that, should plaintiff fail to provide a written response, the NSA

---

[10] It is unclear who was responsible for maintaining the Timeline of Events, which essentially logs the EEO investigator's interactions with respect to the case.  Context suggests the Timeline was maintained by the EEO investigator.

[11] The date of this telephone conversation is not specified, but context suggests it occurred on December 17, 2010.

EEO would "begin dismissal procedures…." *Id.*

On January 3, 2011, via email, plaintiff sent the EEO investigator her responses to the first six interrogatories. *See* defendant's Exh. 11.[12]  She indicated in her email that she would "work on…the rest of the Interrogatories in the morning." *Id*.

The next day, January 4, 2011, the EEO investigator emailed plaintiff's attorney to report that the interrogatories were not fully answered. *See* defendant's Exh. 12.  He indicated that Kobraei had emailed him, informing him that "she was ill during the 3rd week of December and upon her return to work, she was 'surrounded with large volume [sic] of backlog work.'" *Id*.[13]  Accordingly, he extended the response deadline, to January 10, 2011.  *Id.*  But, plaintiff's counsel was cautioned that the case would be dismissed if plaintiff failed to comply with the

---

[12] Plaintiff answered the following questions, *see* defendant's Exh. 8, 11:

1. Please state your name, national origin, date of birth and age at the time of the alleged discrimination, on or about 09 July 2009.

2. Please state your current organization, position and how long you have been assigned to the organization and held that position.

3. At the time of the alleged discrimination, what organization were you assigned to and what position did you hold?  How long had you been with the organization and held that position?

4. At the time of the alleged discrimination what were your job duties and responsibilities?

5. Who was in your managerial chain of command at the time of the alleged discrimination?

6. Who do you feel was the Responsible Management Official(s) (RMOs) who discriminated against you and subjected you to harassment, based on your age and national origin?  Why do you believe this?  (Please be specific in your response)

[13] The email that Kobraei sent to the EEO investigator on January 3, 2011 (defendant's Exhibit 11) states, as noted, that Kobraei was submitting the first six interrogatories and would work on submitting the rest the following day.  There is no discussion of Kobraei's illness in Exhibit 11.  However, context suggests that Kobraei communicated again with the EEO investigator on January 3, 2011, and informed the EEO investigator of her illness.  Apparently, plaintiff told the EEO investigator that she "had a sinus infection and therefore was home during 21-27 December 2010." *See* Timeline of Events, defendant's Exh. 17, ¶ 58.

deadline.  *Id.*  On the same day, the EEO investigator sent a similarly worded email to Kobraei.  *See* defendant's Exh. 13.

On January 5, 2011, the EEO investigator emailed plaintiff's counsel to advise that he and Kobraei had corresponded the previous day via email.[14]  *See* defendant's Exh. 15.  The email stated, *id.* (emphasis in original):

> Your client and I had some additional contact yesterday via Agency email.  Yesterday at approximately 1300 hours, your client sent me an email with an attachment.  Your client asked me to review the document and let her know if I wanted additional supporting documents.  I responded back to your client that it was her responsibility to *answer* the questions and relate/refer to the specific document etc., in her answer.  *Yesterday I also sent your client an email indicating she was being provided with seven additional calendar days to work on the interrogatories.*  Upon arriving at work this morning I observed that your client sent me four emails containing approximately seven megabytes of documents/emails etc.  Again, your client failed to relate the attachment to a specific Interrogatory.  It is imperative that your client answer the Interrogatories and if she believes that a document(s) is relevant, she should print it off and refer to it in her response to my Interrogatories.  I will not accept bulk documents as it is not my responsibility to determine where they fit into your client's responses.  If your client continues to provide documents as she has, I will include an investigator's note in my report that indicates your client failed to follow my instructions.  Please advise if you have any questions or concerns. I can be reached by phone or this email. Thank you.  (Emphasis added).

Two days later, on January 7, 2011, Kobraei emailed the EEO investigator.  *See* defendant's Exh. 16.  She advised that she had spoken to her attorney, and stated that she had "tried to provide [the investigator] with material for support of [her] case, some [of which] might be viewed as highly related and some [of which] might be considered marginally related," but that she "trust[ed] that [the investigator would] make a wise decision on which ones are more sound and relevant."  *Id.*  She also said that, in order to respond "statement by statement as [the investigator had] requested," she "would need more time."  *Id.*  She explained that she had gotten

---

[14] The correspondence exchanged between plaintiff and the EEO investigator on that date has not been made part of the record.

a new computer monitor that took four hours to install, and so she "did not have much time to work on the Interrogatories." *Id*.  She added: "This process is time consuming." *Id*.

The EEO investigator responded to plaintiff's email on the deadline date, January 10, 2011, informing her that "complete responses to each and every Interrogatory [were] due [that day] by close of business." *Id*.  He noted his previous requests for complete responses and advised, *id.*: "Pursuant to EEO regulations, previously stated in the aforementioned emails, faxes and letter, you are being advised that if your completed responses to all the Interrogatories are not received in this office by close of business today, your claim…will be dismissed."

The day after the deadline, on January 11, 2011, plaintiff's attorney called the EEO investigator and left a voicemail message, complaining about the number of interrogatories, protesting the potential dismissal, and asking for the name and contact information of the investigator's supervisors.  *See* Timeline of Events, defendant's Exh. 17, ¶ 81.  The next day, the EEO investigator returned the call, and provided the requested contact information.  *Id.* ¶ 82.  He heard nothing more from plaintiff or her attorney that day.  *Id.* ¶ 83.

On February 27, 2011, Marlisa L. Smith, Director of Equal Employment Opportunity and Diversity at NSA, issued the Final Agency Decision (the "Decision"), stating: "After a thorough review of this case, the Agency finds it must dismiss Complainant's claims for failing to cooperate."  Final Agency Decision, defendant's Exh. 18, at 4.  At that time, plaintiff still had not submitted complete answers to the interrogatories.  *Id.* at 2 ("To date, the Agency has not received Complainant's fully completed interrogatories.").  Observing that Kobraei "did not return the completed interrogatories by any of the deadlines she was given," *id.* at 4, the Decision explained that the EEO investigator "never received complete information from Complainant and was therefore unable to do his job, which was to adequately investigate Complainant's

claims.  Complainant failed to comply with the Agency's requests for additional information.

Accordingly, her case is dismissed."  *Id.* at 5.

The Decision recounted in detail the EEO investigator's attempts to obtain the

interrogatory answers from plaintiff and her attorney, *see id.* at 1-4, and explained, *id.* at 4

(emphasis added):

> In accordance with 29 C.F.R. § 1614.107(a)(7), when a complainant receives a
> notice of an agency's intent to dismiss his/her case, and the complainant fails to
> send the information requested in the notice or submits a response that does not
> address the requested information within 15 days of the notice's receipt, provided
> that the notice included a notice of proposed dismissal, the agency *shall* dismiss
> the case.  It has been determined that a complaint should only be dismissed for
> failure to cooperate where there is a clear record of delay or contumacious
> conduct on the part of the complainant.  *Connolly v. Papachristid Shipping, Ltd.*,
> 504 F.2d 917 (5th Cir. 1974).   Also, the Equal Employment Opportunity
> Commission (EEOC) has held that a complaint should not be dismissed when
> there is sufficient information on which to base an adjudication.  *Ross v. United
> States Postal Service,* EEOC Request No. 059000693 (August 17, 1990);
> *Mignone v. Department of the Treasury*, EEOC Request No. 01960036
> (November 6, 1996).

Further, the Decision said, *id*. at 4-5:

> [T]he Investigator had no means of appropriately investigating Complainant's
> claims.  Although Complainant complained about the number of interrogatories
> that needed to be completed, it is clearly within the investigator's discretion to
> determine how to conduct an investigation and what is required for a completed
> investigation.  29 C.F.R. sect. 1614.108(c)(1) and EEO Management Directive
> 110, sect. V, pp. 6-5 to 6-7.  From a review of the interrogatories, it is apparent
> that the Investigator reviewed Complainant's harassment claim (which included
> 11 issues) and appeared to be attempting to gather specific information regarding
> each issue.

The Decision advised plaintiff of her right to appeal to the Equal Employment

Opportunity Commission ("EEOC") within 30 days, or to file a civil action in an appropriate

United States District Court within 90 days.  *Id.* at 6.  Plaintiff timely appealed to the EEOC's

Office of Federal Operations ("OFO").  She argued that "the interrogatories constituted a major

barrier to pursuing the formal complaint, noting that although there were 102 questions, many

questions had several follow-up questions," and that the EEO investigator "consistently declined Complainant's repeated offers to do a personal interview."  *See* OFO Decision, defendant's Exh. 19 at 2.[15]

On August 23, 2011, the OFO affirmed the dismissal.  In the OFO's view, the interrogatories were "nothing more than standard questions [in] order to demonstrate the presence of elements tending to prove or disprove allegations of unlawful discrimination," and Kobraei's failure to cooperate left NSA with "no evidence…which the Agency could use to adjudicate the complaint."  *Id.* at 3.  Moreover, the OFO observed that "the record clearly shows the EEO investigator engaged in repeated attempts to secure responses to the interrogatories in order to proceed with the investigation."  *Id.*  According to the OFO, "there simply is nothing in the record" to support the contention of Kobraei's attorney that "the investigator declined to interview Complainant in person."  *Id.*  Plaintiff was advised that she could petition the OFO for reconsideration within 30 days, or "file a civil action in an appropriate United States District Court within ninety (90) calendar days…."  *Id.* at 4.

Plaintiff filed suit on October 28, 2011, within 90 days of the OFO decision.  *See* Complaint (ECF 19).  However, she did not file suit in a United States District Court, as directed.  Rather, she filed suit in the Circuit Court for Anne Arundel County, Maryland.  *See id.*  She filed an Amended Complaint (ECF 2) on November 21, 2011.  In paragraph 15 of both the Complaint

---

[15]  In her affidavit, plaintiff's Exh. 6, at ¶ 29, Kobraei asserts: "My attorney told [the] investigator that I was available for an interview."  But, plaintiff does not point to any evidence in the record indicating that her attorney in fact asked the EEO investigator to interview Kobraei.  A memorandum written by plaintiff and addressed to her attorney, dated March 16, 2012, has been made part of the record as plaintiff's Exhibit 7.  In that memorandum, plaintiff asks her attorney why the EEO investigator "did not suggest meeting in person and recording [her] answers to his interrogatory questions," as it was "difficult for [her] to mak[e] time to answer his large volume of questions in a WRITTEN format" due to her work commitments.  *Id.* (emphasis in original).  But, the memorandum does not establish that plaintiff's attorney transmitted such a request to the EEO investigator.

and the Amended Complaint, plaintiff averred that she had "filed a charge of discrimination on the basis of national origin and age in employment with the Equal Employment and Diversity ('EEOD')," which had "issued a Right to Sue Notice authorizing this lawsuit," and that she had "therefore…exhausted her administrative remedies."

Defendant was served with the Amended Complaint on November 29, 2011. *See* Response To Standing Order Concerning Removal (ECF 10 ¶ 1). On December 5, 2011, defendant removed the case to this Court, "pursuant to 28 U.S.C. §§ 1441, 1442 and 1446." *See* Notice Of Removal (ECF 1).

The Motion was filed on February 23, 2012. *See* ECF 22. In support of the Motion, defendant argues, Memo at 1-2:

> First, this action was filed originally in state court and consequently, in light of the Fourth Circuit's recent ruling in *Bullock v. Napolitano*, 2012 WL 207335 (C.A. 4 (N.C.)), *decided January 23, 2012,* this Court lacks the subject-matter jurisdiction to entertain it. Second, the Plaintiff did not exhaust her administrative remedies in that she failed to cooperate with NSA's investigation of her claim, which also deprives this Court of subject-matter jurisdiction.

### Standard of Review

Defendant has moved to dismiss, pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion at 1. In the alternative, defendant has moved for summary judgment, pursuant to Fed. R. Civ. P. 56.

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006). Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve,* 628 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd,* 85 F. App'x

960 (4th Cir. 2004).[16]   Once a challenge is made to subject matter jurisdiction, the plaintiff bears

the burden of proving that the Court has subject matter jurisdiction.  *See Evans v. B.F. Perkins*

*Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir.1999); *see also Ferdinand-*

*Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Khoury,* 268 F. Supp.

2d at 606.

A defendant may also test the adequacy of a complaint by way of a motion to dismiss

The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts

are not in dispute and the moving party is entitled to prevail as a matter of law."  *Evans,* 166 F.3d

at 647.   In ruling on a motion under Rule 12(b)(1), the court "should 'regard the pleadings as

mere evidence on the issue, and may consider evidence outside the pleadings without converting

the proceeding to one for summary judgment.'"  *Ferdinand–Davenport,* 742 F. Supp. 2d at 777

(quoting *Evans,* 166 F.3d at 647); *see also Richmond, Fredericksburg & Potomac R.R. Co. v.*

*United States,* 945 F.2d 765, 768 (4th Cir.1991), *cert. denied,* 503 U.S. 984 (1992).

A defendant may also test the adequacy of a complaint by way of a motion to dismiss

under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.  *McBurney v.*

*Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *German v. Fox*, 267 F. App'x 231, 233 (4th Cir.

2008).   Notably, under Fed. R. Civ. P. 12(d), if "matters outside the pleadings are presented to

and not excluded by the court," then the Rule 12(b)(6) motion "must be treated as one for

summary judgment under Rule 56."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484

F.3d 700, 705 (4th Cir. 2007).   Ordinarily, summary judgment is inappropriate if "the parties

have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co. v. Kolon*

---

[16] "[A] motion to dismiss under Rule 12(b)(1) is nonwaivable and may be brought at any time-even on appeal-regardless of whether a litigant raised the issue in an initial pleading." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548 (4th Cir. 2006); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

*Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).   However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"   *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

Generally, in order to raise the issue that discovery is needed, the non-movant must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)).   Although the parties have not yet engaged in discovery, plaintiff has not filed a Rule 56(d) affidavit.   And, plaintiff appended numerous exhibits to her own submission.   Therefore, I will construe the Motion as one for summary judgment under Fed. R. Civ. P. 56, and consider "matter outside the pleadings." Fed. R. Civ. P. 12(d).   *See, e.g., Jakubiak v. Perry,* 101 F.3d 23, 24 & n. 1 (4th Cir. 1996) (reviewing district court's dismissal of federal employee's employment discrimination claim for failure to exhaust administrative remedies under summary judgment standard, where district court considered matter outside the pleadings).

Under Rule 56(a), summary judgment is properly granted only if the movant shows that "'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting former Fed. R. Civ. P. 56(c)).   The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the entry of judgment as a matter of law.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   A fact is "material" if it "might affect the outcome of the suit under the governing law."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In resolving the motion, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott*, *supra*, 550 U.S. at 378. However, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, *supra*, 475 U.S. at 586; *see In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24.

The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict" for the nonmoving party, there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

### Discussion

"As amended, Title VII of the Civil Rights Act of 1964 creates a right of action for both private-sector and certain[] federal employees alleging employment discrimination on the basis of race, color, religion, sex, or national origin." *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). *See* 42 U.S.C. § 2000e-16(c) (specific to "Employment by Federal Government"). "All employees, private-sector or federal, alleging such discrimination must, however, exhaust their administrative remedies before exercising this right." *Laber*, 438 F.3d at 415 (citing *Brown v.*

*Gen. Servs. Admin.,* 425 U.S. 820, 832 (1976)).  In *Laber*, the Fourth Circuit said, 438 F.3d at 416:

> A federal employee who believes that his employing agency discriminated against him in violation of Title VII must file an administrative complaint with the agency.  *See* 29 C.F.R. § 1614.106.  The agency investigates the claim, *see* 29 C.F.R. § 1614.108-109, and, if it concludes there was no discrimination, it issues a final agency decision to that effect, *see* 29 C.F.R. § 1614.110.  The employee may then appeal the agency's decision to the OFO.  *See* 29 C.F.R. § 1614.401(a).[1]

Ordinarily, exhaustion of administrative remedies is a prerequisite to suit.  The failure of a federal employee claiming employment discrimination to exhaust administrative remedies is an "affirmative defense," for which the employer has the burden of proof.  *Young v. Nat'l Ctr. for Health Servs. Research,* 828 F.2d 235, 238 (4th Cir. 1987); *accord Belgrave v. Peña,* 254 F.3d 384, 386 (2d Cir. 2001); *cf. Jones v. Bock,* 549 U.S. 199, 212 (2007) ("[T]he usual practice under the Federal Rules is to regard exhaustion as an affirmative defense.").  Failure to exhaust is sometimes described in jurisdictional terms.  *See, e.g., Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.").

Although "private sector Title VII cases do not require a claimant to cooperate in the administrative process, the same is not true in cases involving federal employees."  *Austin v. Winter*, 286 F. App'x 31, 36 (4th Cir. 2008).  Unlike the private sector, "[e]xhaustion [in an action against a federal agency] requires that a plaintiff comply with regulatory and judicially-imposed exhaustion requirements, including the requirement to pursue the administrative claim 'with diligence and in good faith.'"  *Jasch v. Potter,* 302 F.3d 1092, 1094 (9th Cir. 2002).

In fact, a "complainant's failure to cooperate in the administrative process precludes exhaustion when it prevents the agency from making a determination on the merits."  *Id.  See,*

*e.g., Woodard v. Lehman,* 717 F.2d 909, 914 (4th Cir. 1983) (holding that dismissal for failure to exhaust administrative remedies was required where claimants "refused to supply any specific information or details of discriminatory action suffered by them"). *See also Austin,* 286 F. App'x at 36–37 (holding that claimant's refusal to participate in a "fact-finding conference" prevented the agency "from fully investigating the complaint and reaching a final decision," and constituted "a failure to exhaust her administrative remedies"); *Johnson v. Bergland,* 614 F.2d 415, 417–18 (5th Cir. 1980) (affirming dismissal for failure to exhaust administrative remedies where agency "requested information concerning specific instances [of discrimination] and their dates to support" plaintiff's claim, plaintiff's reply merely "included general statements of unspecified time," and agency then denied claim on the ground that "plaintiff's allegations 'are so vague and general that specific issues related to discrimination cannot be defined'") (quoting agency).[17]

Defendant asserts: "By refusing to answer all but a small fraction of the EEO

---

[17] As noted, *supra* n.1, neither the Complaint nor the Amended Complaint invokes the ADEA, despite the allegations of discrimination on the basis of age. "The exhaustion requirements for federal employees alleging discrimination under the ADEA are different" from those regarding Title VII. *Verrier v. Sebelius*, No. CCB–09–402, 2010 WL 1222740, *8 (D. Md. Mar. 23, 2010). Federal employees complaining of age discrimination do "not have to seek relief from [their] employing agency or the EEOC at all." *Stevens v. Dep't of Treasury,* 500 U.S. 1, 6 (1991). Rather, federal employees can "present the merits of [their claims] to a federal court in the first instance." *Id.*

Essentially, when a federal employee pursues a claim of age discrimination under the ADEA, she may follow "one of two procedural paths." *Smith v. Potter*, 400 F. App'x 806, 809 (5th Cir. 2010). If she forgoes administrative remedies, she may proceed directly to federal district court, but if she chooses the alternative path and "proceeds down the administrative route, [s]he 'must completely exhaust h[er] administrative remedies before commencing suit in federal court.'" *Id.* at 810 (citation omitted). Moreover, should the employee seek to file a civil action directly, she must give the EEOC "not less than thirty days' notice of intent to sue." *Shelley v. Geren*, 666 F.3d 599, 605 n.1 (9th Cir. 2012). *See* 29 C.F.R. § 1614.201(a). As in *Shelley*, "There is no evidence that [plaintiff] provided the EEOC with notice of [plaintiff's] intent to sue the [agency], and [plaintiff] does not appear to rely on this alternative avenue." 666 F.3d at 605 n.1. Therefore, even if the Amended Complaint is liberally construed to contain a claim under the ADEA, plaintiff would have had to exhaust her administrative remedies, because she began that process. In any event, plaintiff does not dispute that she was required to exhaust her administrative remedies.

investigator's interrogatories, the Plaintiff did not fulfill her obligation to exhaust her administrative remedies." Memo at 19. Defendant also argues that "additional grounds [plaintiff] raises in her Complaint…were not raised in her administrative claim and were therefore not exhausted with the result that this court does not have the subject-matter jurisdiction to hear them." *Id.* (citing *Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005)).[18]

Plaintiff counters that she exhausted her administrative remedies prior to bringing suit because she "provide[d] voluminous information to the investigator and repeatedly asked the investigator to come and interview her." Opposition at 10. As noted, however, plaintiff has not identified any evidence in the record indicating that the EEO investigator was asked to interview plaintiff, or that her request was refused. Nor does plaintiff point to any legal authority indicating that the EEO investigator was obligated to interview plaintiff, in lieu of propounding interrogatories to her.

In her Opposition, at 10, plaintiff argues:

> There are several instances in which a failure to fully cooperate with the administrative proceedings were [sic] not fatal to the claim. "When an agency proceeds to reach the merits of the case rather than dismiss the claim for a failure to cooperate, it has determined that sufficient information exists for such adjudication. After all, the agency itself is in a strong position to evaluate whether the complainant has sufficiently complied with its own requests for information." (Quoting *Jasch*, *supra*, 302 F.3d at 1095).

Kobraei concedes, however, that "[i]n the instant case, the final agency decision failed to analyze the issues involved and dismissed them for lack of response to [the interrogatories]." Opposition at 11. Plaintiff then cites, with little elaboration, several cases in which courts

---

[18] Because I find that plaintiff failed to exhaust her administrative remedies based on her failure to cooperate with the EEO investigator, I need not resolve this aspect of the exhaustion contention.

rejected exhaustion defenses because the relevant agency was, despite the complainant's failure to cooperate, able to address the merits of the complainant's allegations, or because the agency did not itself complain of the employee's failure to cooperate during the investigation.  *See, e.g., Wilson v. Pena*, 79 F.3d 154, 164 (D.C. Cir. 1996) ("Because the agency was able to take final action on the merits of Wilson's complaint, his suit cannot be barred solely for any default in responding to the agency's request for information."); *Ward v. Florida Dep't of Juvenile Justice*, 194 F. Supp. 2d 1250, 1255-56 (N.D. Fla. 2002) (rejecting defendant's contention "that the court should find that Plaintiff frustrated the administrative process and should not be permitted to proceed with this litigation, even though the administrative agency made no determination of that issue," noting that "the agency did *not* dismiss the claim for lack of cooperation by the claimant") (emphasis in original); *Mayfield v. Meese*, 669 F. Supp. 1123, 1126 (D.D.C. 1987) ("Neither the complaints adjudication officer who issued the final decision…nor the attorney examiner who made a recommended decision, issued findings that [plaintiff] had not complied adequately with the administrative process.  Instead, both these people adjudicated [plaintiff's] complaint on the merits….The fact that the agency proceeded to a decision on the merits is a much more reliable indicator that a plaintiff's cooperation was adequate than the government's assertions during subsequent litigation.").

In reply, defendant maintains that the "arguments made by the Plaintiff and authorities she cites in support of her position that she exhausted her administrative remedies are unavailing and frankly, they support the Defendant's position on this issue."  Reply at 5-6.  Defendant observes that the record "reflects that the EEOC expressly noted it *could not reach* the merits of Plaintiff's formal complaint precisely because of her failure to cooperate with the EEO investigator."  *Id.* at 6 (emphasis in original).

As the Ninth Circuit said in *Jasch*, a case cited by plaintiff, a "complainant's failure to cooperate in the administrative process precludes exhaustion when it prevents the agency from making a determination on the merits." 302 F.3d at 1094. In this case, NSA determined that it could not reach the merits of plaintiff's claims because of plaintiff's failure to cooperate. In the Decision, NSA's Director of EEO and Diversity found that "the Investigator had no means of appropriately investigating Complainant's claims." *See* defendant's Exh. 18 at 4-5. Therefore, the Agency dismissed the claims "for failing to cooperate." *Id.* at 4. The OFO subsequently determined that Kobraei's failure to cooperate left NSA with "no evidence…which the Agency could use to adjudicate the complaint." OFO Decision, defendant's Exh. 19, at 3.

Although Kobraei complained about the number of interrogatories posed to her, she seems to have overlooked that she presented eleven claims, which undoubtedly contributed to the number of interrogatories. Nor did they constitute "a major barrier to pursuing the formal complaint." *See* OFO Decision, defendant's Exh. 19, at 2.

Plaintiff makes much of the fact that a number of the questions had subparts. Examination of the questions with subparts reveals that most of them are requests for elaboration. *See, e.g.,* Interrogatory No. 13, defendant's Exhibit 8, at 6 ("What accomplishments do you believe were omitted from your mid-cycle review? Was your management aware of these accomplishments prior to you receiving your mid-cycle review? If so, how were they aware of them? Why do you believe the accomplishments were omitted?"); Interrogatory No. 19, *id*. ("Please specify what additional actions and/or comments were made by your management or others that lead you to believe that you were subjected to harassment based on your age, when in March 2010, you were given your mid-cycle review? Please provide specific examples of what was said, by whom, when it was said, the form of the communication

(personal meeting, phone conversation, emails, etc.) and the intended audience for the comments.").

The six questions that plaintiff answered were essentially preliminary inquiries. Yet, plaintiff never answered the specific inquiries, consisting of approximately eight questions for each of her eleven claims. Even if plaintiff thought that too many interrogatories had been posed, it is hard to excuse a wholesale failure to respond to all but six preliminary questions.

Moreover, plaintiff has not pointed to any authority that would suggest that the EEO investigator was limited to a set number of interrogatories; not entitled to require answers to the interrogatories; or required to conduct an oral interview with plaintiff in lieu of written responses. To the contrary, the law requires that the complainant "produce such documentary and testimonial evidence as *the investigator* deems necessary." 29 C.F.R. § 1614.108(c)(1) (emphasis added). It is also uncontroverted that Kobraei was given several extensions to answer the interrogatories; she was represented by counsel; and her reasons for her failure to respond were largely centered on inconvenience: a brief illness (a sinus infection); work commitments; and her inability to use her computer for four hours while a new monitor was installed.

On this record, it is plain that plaintiff failed to exhaust her administrative remedies. Therefore, defendant is entitled to summary judgment.[19]  A separate Order follows.

---

[19] Defendant also argues that because plaintiff improperly commenced suit in a state court, which had no jurisdiction over her claims, this Court now lacks subject matter jurisdiction. Defendant relies on the Fourth Circuit's recent opinion in *Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012), with respect to removals pursuant to 28 U.S.C. § 1442, stating: "'If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.'"  (Citation omitted).  In defendant's view, the defect cannot be cured, because plaintiff failed to file suit in an appropriate United States District Court within the allotted ninety day window.

Plaintiff did not respond to the argument regarding the failure to file in a United States District Court within the ninety day window.  But, she maintains that the case was not removed solely pursuant to 28 U.S.C. § 1442.  She points to the Notice Of Removal (ECF 1), in which

Date: August 21, 2012                                    _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge

--------------------------------------------------------------------------------

defendant stated that removal was "pursuant to 28 U.S.C. §§ 1441, 1442 and 1446."  Moreover, plaintiff observes that the rule articulated in *Bullock* does not apply to removal pursuant to 28 U.S.C. § 1441, as the *Bullock* Court explicitly noted that "Congress has specifically abrogated the doctrine of derivative jurisdiction in cases removed under 28 U.S.C. § 1441…."  666 F.3d at 286 n.2.  *See* 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.").

    Having found that plaintiff failed to exhaust her administrative remedies, I need not address defendant's argument regarding subject matter jurisdiction.